## GILMORE *v.* ANDERSON *et al.*

*Circuit Court, S. D. New York.* May 5, 1890.

COPYRIGHT—INFRINGEMENT—ACCOUNTING FOR PROFITS.

Defendant printed about 17,000 books infringing plaintiff's copyright, sold 1,000 at 23 cents each, gave away 1,000, and sold or exchanged the rest at 56¼ cents each. His account-books had been sold for paper stock before suit began, and many books received in exchange became comparatively worthless through no fault of his, but how many could not be told, nor how much he received from sales of those so received. His expense account showed that he must have received $6,770, in order to make a profit. *Held,* that the evidence failed to show any profit.

In Equity. On exceptions to master's report, 38 Fed. Rep. 846.

*Charles C. Burlingham,* for complainant.

*J. H. Parsons*, for defendants.

SHIPMAN, J.   The interlocutory decree in this case directed the master to ascertain and report the profits which accrued to the defendants by reason of their infringement of the plaintiff's copyright.   38 Fed. Rep. 846.   The master has reported in regard to the defendant Anderson, who was the publisher of the infringing book, that, while the expense side of the account can be ascertained, the proofs do not enable an ascertainment of how much Anderson received from the sales, and there is therefore a failure to prove that he realized any gains, profit, or advantage.   The complainant has taken four exceptions to so much of the report as relates to Anderson, the object of each exception being to point out that the master was mistaken in his conclusion.

My study of the evidence has led me to surmise that Anderson made a pecuniary profit from the sales of the book.   I have been, therefore, desirous to see if that suspicion or belief can be verified, and if any particular amount of profit can be found by trustworthy evidence, and have reached the conclusion that the master was right, and that the exceptions must be overruled.   Anderson's books of account were sold for paper stock before the suit was brought.   He printed between 16,000 and 17,000 copies of the Alger book, gave away 1,000 copies, sold 1,000 more at about 23 cents per copy, and sold or exchanged the rest at 56¼ cents per copy.   How many of these 14,000 or 15,000 copies he exchanged for school-books, which became comparatively worthless, he does not know, and he does not tell how much he received in money from the books which he received in exchange.   He says that the sales for money were less than 10,000 copies, and he cannot swear that there were over 6,000 copies; that he exchanged a great many copies for school-books, and a large part of the books taken in exchange were sold at one cent per pound.   His expense account can be ascertained with reasonable certainty, but the inability to know what he received for this uncertain number which was exchanged constitutes the defect in the proofs.   In the ascertainment of actual profits, these exchanges for goods, which subsequently turned out, through no want of business skill or enterprise in the owner, to be worthless, stand upon the same footing as sales which became uncollectible.   If there was any evidence that Anderson could have sold the school-books, if he had acted promptly and with business enterprise, or if the actual market value of the school-books, at the time of the exchange, was known, the case would present a different state of facts.   Placing the expense account at the lowest figures which it can reasonably bear, he should have received $6,770, in order to make a profit.   If his cash receipts amounted to $8,000, he clearly made a profit, for his estimate of the expenses is plainly too large; but there are no adequate means of determining in any reliable manner what sum he did receive.   The exceptions are overruled.